# No. 19-70021

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

**v.**

**BRANDON BERNARD,**

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

---

**APPELLEE'S BRIEF FOR THE UNITED STATES OF AMERICA**

---


John F. Bash
United States Attorney

Joseph H. Gay, Jr.
Appellate Chief

Elizabeth Berenguer
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7090

ATTORNEYS FOR APPELLEE

## Statement of Related Cases

This appeal concerns the movant-appellant's challenge to the district court's transfer of his successive habeas motion under 28 U.S.C. § 1631. The movant-appellant has also requested authorization to file a successive habeas motion in Appeal No. 19-50837. Because these filings present interrelated issues, these cases should be consolidated. *See United States v. Fulton*, 780 F.3d 683, 688 (5th Cir. 2015).

## Recommendation on Oral Argument

The United States waives oral argument in this case. The briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the decisional process. *See* Fed. R. App. P. 34(a)(2)(C); 5th Cir. R. 28.2.3. Additionally, all of the issues raised by the movant-appellant can be settled by well-established precedent.

## Table of Contents

**Pages**

Statement of Related Cases ........ ii

Recommendation on Oral Argument ........ ii

Table of Authorities ........ iv

Jurisdiction ........ 1

Statement of the Issues ........ 1

Statement of the Case ........ 2

A. The Murder of Todd and Stacey Bagley ........ 2
B. The Trial ........ 4
C. Bernard's Prior Post-Trial Proceedings ........ 5
D. Tony Sparks' 2018 Resentencing ........ 7

Summary of the Arguments ........ 10

Arguments and Authorities ........ 11

I. The District Court Lacked Jurisdiction over Bernard's Third-in-Time Motion for Post-Conviction Relief Because it Was an Unauthorized Successive § 2255 Motion ........ 11

A. Standard of Review ........ 11
B. Argument ........ 12

II. The District Court Properly Construed Bernard's Purported Rule 60(b) Filing as an Unauthorized Successive § 2255 Motion ........ 17

A. Standard of Review ........ 17
B. Argument ........ 17

1. Bernard's motion is a quintessential successive § 2255 motion ..... 18

2. Even under Rule 60(b), Bernard has not demonstrated sufficient "extraordinary circumstances" justifying the reopening of his initial § 2255 proceedings ..... 23

3. Bernard's claim that the restrictions in § 2255(h) violate the suspension clause is contrary to Circuit precedent ..... 31

Conclusion ..... 33

Certificate of Service ..... 33

Certificate of Compliance ..... 34

## List of Authorities

**Federal Cases** **Pages**

*Benefiel v. Davis*, 403 F.3d 825 (7th Cir. 2005) .......... 32

*Blackman v. Davis*, 909 F.3d 772 (5th Cir. 2018) .......... 12–16

*Brady v. Maryland*, 373 U.S. 83 (1963) .......... *passim*

*Brown v. Muniz*, 889 F.3d 661 (9th Cir. 2018) .......... 15

*Coleman v. Stephens*, 768 F.3d 367 (5th Cir. 2014) .......... 17

*Dist. Att'y's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) .......... 16

*Edwards v. Davis*, 865 F.3d 197 (5th Cir. 2017) .......... 19

*Evans v. Smith*, 220 F.3d 306 (4th Cir. 2000) .......... 15

*Felker v. Turpin*, 518 U.S. 651 (1996) .......... 31, 32

*Fierro v. Johnson,* 197 F.3d 147 (5th Cir. 1999) .......... 21, 22, 23

*Ford v. Wainwright*, 477 U.S. 399 (1986) .......... 13, 14

*Gilkers v. Vannoy*, 904 F.3d 336 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1192 (2019) .......... 19

*Gonzalez* v. *Crosby*, 545 U.S. 524 (2005) .......... 18, 19, 20, 24

*Haynes v. Davis*, 733 F. App'x 766 (5th Cir. 2018) .......... 20

*In re Davila*, 888 F.3d 179 (5th Cir. 2018) .......... 12–13

*In re Pickard*, 681 F.3d 1201 (10th Cir. 2012) .......... 15

*In re Wogenstahl*, 902 F.3d 621 (6th Cir. 2018) .......... 15

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................. 25

*Lave v. Davis*, 655 F. App'x 255 (5th Cir. 2016) .................................... 21

*Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009) ............... 13, 16

*Magwood v. Patterson*, 561 U.S. 320 (2010) .......................................... 12

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
851 F.3d 1076 (11th Cir. 2017) (en banc) ...................................... 32

*Miller v. Alabama*, 567 U.S. 460 (2012)...................................................... 7

*Napue v. Illinois*, 360 U.S. 264 (1959) .......................................... *passim*

*Norwood v. Vance*, 517 F. App'x 557 (9th Cir. 2013)............................. 24

*Padilla v. United States*, 416 F.3d 424 (5th Cir. 2005) .......................... 11

*Panetti v. Quarterman*, 551 U.S. 930 (2007).................................... 12-16

*Quezada v. Smith*, 624F.3d 514 (2d Cir. 2010)...................................... 15

*Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001) ............. 31

*Richards v. Ctr. County Transp. Auth.*,
540 F. App'x 83 (3d Cir. 2013)....................................................... 24

*Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018) .......................... 15

*Segundo v. Davis*, 757 F. App'x 333 (5th Cir. 2018)............................... 20

*Spence v. Johnson*, 80 F.3d 989 (5th Cir. 1996)............................... 26–27

*Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011)........................ 14

*Strickler v. Greene,* 527 U.S. 263 (1999) ................................................. 25

*Tompkins v. Sec'y, Dep't of Corr.*,
557 F.3d 1257 (11th Cir. 2009) .............................................. 14, 15

*United States v. Beers*, 189 F.3d 1297 (10th Cir. 1999).......................... 26

*United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002)...................... 2, 30

*United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014),
*cert. denied*, 136 S. Ct. 892 (2016)................................................... 6

*United States v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011) .................... 14

*United States v. Fernandez*, 797 F.3d 315 (5th Cir. 2015) ..................... 24

*United States v. Fulton*, 780 F.3d 683 (5th Cir. 2015).......................... ii, 1

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) ............................. 26

*United States v. Sipe*, 388 F.3d 471 (5th Cir. 2004) ............................... 26

*United States v. Sparks*, 31 F. App'x 156 (5th Cir. 2001)......................... 7

*United States v. Sparks*, No. 18-50225,
2019 WL 5445897 (5th Cir. Oct. 24, 2019) ....................................... 7

*United States v. Vasquez-Hernandez*,
924 F.3d 164 (5th Cir. 2019) ......................................................... 26

*United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018),
*cert. denied*, No. 18-6992, 2020 WL 129539 (Jan. 13, 2020) ........... 7

*Wesson v. U.S. Penitentiary Beaumont*,
305 F.3d 343 (5th Cir. 2002) ......................................................... 31

**Federal Rules**

Fed. R. App. P. 32 .......... 34

Fed. R. App. P. 34 .......... ii

Fed. R. Civ. P. 60 .......... 6, 18, 24

**Federal Statutes**

28 U.S.C. § 1631 .......... ii, 1, 10

28 U.S.C. § 2244 .......... 12, 13, 15, 16

28 U.S.C. § 2253 .......... 1

28 U.S.C. § 2255 .......... *passim*

**Miscellaneous**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, §§ 105, 106, 110 Stat. 1214, 1220–21 .......... 12

U.S. Const. art. I, § 9, cl. 2 .......... 31

## Jurisdiction

This is an appeal of the district court's transfer order in a federal habeas case. The district court lacked jurisdiction under 28 U.S.C. § 2255(h), and transferred the case to this Court under 28 U.S.C. § 1631. (ROA.2442.) The movant-appellant filed a timely notice of appeal. (ROA.2444–46.) This Court now has jurisdiction pursuant to 28 U.S.C. §§ 1631, 2253(c)(1)(B). *See Fulton*, 780 F.3d at 688.

## Statement of the Issues

I. A habeas motion is "second or successive" if the facts underlying the alleged claims occurred before the initial habeas proceedings. The movant filed a third-in-time habeas motion asserting constitutional violations that occurred at trial, before his initial 28 U.S.C. § 2255 proceedings. Were those claims transferred by the district court correctly characterized as "successive" § 2255 claims?

II. Alternatively, the movant sought to classify his motion as a Rule 60(b) motion in which he sought to reopen his initial § 2255 proceedings to add new evidence and arguments in support of his previously-denied claims. Did the district court correctly characterize this Rule 60(b) motion as a successive § 2255 motion?

## Statement of the Case

### A. The Murder of Todd and Stacey Bagley

In 1999, Bernard and other members of a street gang in Killeen, Texas, carjacked and murdered Todd and Stacie Bagley. *See United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002). Gang members—including Christopher Vialva and Tony Sparks—initially developed a plan to abduct and rob a motorist at gunpoint, use the victim's bankcard to make ATM withdrawals, and abandon the victim in a remote area locked inside his own car trunk. *Id.* at 471. Bernard and a fifth gang member later joined the plot. *Id.*

Bernard drove Vialva and the others from one store parking lot to another searching for a victim. *See* 299 F.3d at 471. After some time, Bernard temporarily departed. *Id.* at 472 & n.2. Vialva and the two remaining gang members then located suitable victims, Todd and Stacie Bagley, who were youth ministers visiting from Iowa. *Id.* at 471–72. Two of the group approached Todd and asked for a ride. *Id.* at 472. After Todd agreed, the three gang members entered the backseat of the Bagleys' car, robbed the Bagleys at gunpoint with Bernard's gun, forced the Bagleys

into the trunk of their car, and drove around in the car attempting to empty the Bagleys' bank account from multiple ATMs. *Id.*

While locked in the trunk, the Bagleys spoke to Bernard's coconspirators through the car's rear panel, discussing their faith. 299 F.3d at 472. Sparks told Vialva that he no longer wanted to proceed with the crime, but Vialva "insisted on killing the Bagleys and burning their car to eliminate the witnesses" and any incriminating fingerprints. *Id.* Vialva drove to his home, where he retrieved a ski mask and clothing. *Id.* Meanwhile, the Bagleys pleaded for their lives. *Id.*

After Bernard and the fifth gang member rejoined the group, "Vialva repeated that he had to kill the Bagleys because they had seen his face." 299 F.3d at 472. At Vialva's direction, Bernard and another conspirator then went to purchase fuel to burn the Bagleys' car. *Id.* Sparks went home to avoid missing his curfew. *Id.* at 472 n.3.

Vialva, Bernard, and the two others remaining then drove the Bagleys' car (with the Bagleys still in the trunk) and Bernard's car to a remote area on the Fort Hood military installation. 299 F.3d at 472–73. Bernard and another conspirator poured lighter fluid on the interior of the Bagleys' car, while the Bagleys sang and prayed in the trunk. *Id.* at

472. Stacie Bagley then stated that "Jesus loves you" and "Jesus, take care of us." *Id*. Vialva cursed in reply, put on his mask, ordered the trunk opened, and shot the Bagleys with Bernard's gun. *Id*. at 472–73. Vialva killed Todd instantly with a head shot, but his shot to the side of Stacie's face merely knocked her unconscious. *Id*. Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. *Id*. at 473.

The gang members' escape was foiled when Bernard's car slid off the road into a muddy ditch, where they were found and later arrested by law-enforcement officers responding to the fire. 299 F.3d at 473.

**B. The Trial**

Following a joint trial, a federal jury in the Western District of Texas found Vialva and Bernard guilty of carjacking, murder conspiracy, and the Bagleys' murders. 299 F.3d at 473.

During the penalty phase, Texas Ranger John Aycock testified about the gang's background and structure. He explained that the three brothers who created the gang "chose not to have any titles" to avoid friction between those with titles or positions and those "on the bottom" who "could cause problems for the man on top." (ROA.5382; *see also* ROA.5380–81.) But according to Aycock, some members still "created

problems" within that structure. (ROA.5382–83.) He explained that Vialva's ambition and attempts to "make a name for himself" caused problems within the gang. (ROA.5303.) He further described both Vialva and Sparks as "climbers" who attempted to elevate their status in the gang "with their boldness and things that they could do, their plans and their schemes." (ROA.5383.)

Meanwhile, Aycock suggested that Bernard had a lesser role in the gang. While Vialva was described as the "scary" one in the group, Bernard was merely a "person who would assist and help" other gang members, "and not run from a fight." (ROA.5394.) Other witnesses denied that Bernard was a full-fledged member of the gang; he only "associated" with it. (*See, e.g.*, ROA.4510–11, 4758, ROA.4765, 4770, 4777, 4782–83, 4869, 4985, 5379).

Bernard was sentenced to death for Stacie Bagley's murder. 299 F.3d at 473. This Court affirmed, *id*. at 489, and the Supreme Court denied certiorari, 539 U.S. 928 (2003).

### C. Bernard's Prior Post-Trial Proceedings

In 2004, Bernard moved to vacate his sentence under 28 U.S.C. § 2255. (ROA.453–1157, 1227–1428.) His lengthy 155-page motion and

166-page amended motion raised multiple claims, for which he submitted more than 500 pages of exhibits. (ROA.610–1157, 1392–1428.) Among these claims, Bernard argued that he was denied his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), because the prosecutor failed to disclose material favorable evidence to the defense. (ROA.1240–42, 1367–73.) He also argued that the government deliberately misrepresented facts at trial, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). (ROA.1360–67.)

The district court denied Bernard's motion. (ROA.1717–80.) Its 63-page written order addressed and rejected each of Bernard's § 2255 claims. (ROA.1729-79). The court determined that Bernard's *Brady* and *Napue* claims were procedurally barred and lacked merit. (ROA.1730–31 & n.1, 1738–42.) This Court then denied Bernard's motion for a certificate of appealability (COA). *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 892 (2016).

In 2017, Bernard moved for relief from judgment under Fed. R. Civ. P. 60(b), seeking to reopen his initial habeas proceedings. (ROA.2145–2221.) The district court construed this motion as an uncertified successive § 2255 motion and dismissed it for lack of jurisdiction.

(ROA.2228.) This Court denied Bernard's motion for COA. *United States v. Vialva*, 904 F.3d 356, 358 (5th Cir. 2018), *cert. denied*, No. 18-6992, 2020 WL 129539 (Jan. 13, 2020).

**D. Tony Sparks' 2018 Resentencing**

Meanwhile, Sparks—who was a juvenile at the time of the offense—pleaded guilty to aiding and abetting the carjacking and was initially sentenced to life imprisonment. *See United States v. Sparks*, 31 F. App'x 156 (5th Cir. 2001). But in 2012, the Supreme Court held that juveniles could not be sentenced to mandatory life sentences without parole. *Miller v. Alabama*, 567 U.S. 460 (2012). Sparks was then resentenced. *See United States v. Sparks*, No. 18-50225, 2019 WL 5445897, at *3 (5th Cir. Oct. 24, 2019).

At Sparks' resentencing hearing, the government called former Killeen Police Department gang investigator Sandra Hunt to testify about Sparks' gang involvement. (ROA.18-50225.789.) Hunt was only tangentially involved in the original investigation, and was not listed on the government's witness list for Bernard and Vialva's trial. (ROA.180–85, 241–42.) Hunt identified Sparks as a member of the gang based in

part on a fellow student's drawing identifying the gang's members and structure. (ROA.2314–17.)




(ROA.2413.) The student's diagram only listed members' aliases, so Hunt's gang unit created a second, nearly-identical diagram that also identified the members by their true names. (ROA.2317–19, 2414.)

Hunt testified that the names on the diagram were "organized by the structure of the gang," with the three brothers who originated the gang—whom she described as the "leaders, originators"—listed at the

top. (ROA.2320.) According to Hunt, the chart showed "that the organization was originally started by a bunch of brothers and friends that got together" and that "as the pyramid goes down, it just increases the membership." (ROA.2322.)

With respect to Sparks' position on the chart, Hunt explained he was placed on a row with "the enforcers or recruiters" for the gang. (ROA.2320–21.) His position indicated that Sparks "put in a lot of work" (crime on the gang's behalf) and "became a very trusted member of the group." (ROA.2322.) She further observed that the chart listed Sparks' co-conspirators in the Bagleys' murder, including Vialva and Bernard. (ROA.2321–22.) Hunt pointed out that Bernard was "at the very bottom of the chart of pyramid . . . about 30 people below Mr. Sparks." (ROA.2321.)

Following Sparks' resentencing, Bernard filed his third motion for post-conviction relief, seeking to set aside his death sentence. (ROA.2245–2416.) He alleged that the government had violated *Brady* by suppressing the gang diagrams and the substance of the gang investigator's testimony at Sparks' 2018 resentencing hearing. He

further alleged that the government's theory of the case at trial conflicted with that evidence, which violated his rights under *Napue*.

The district court construed this motion as a successive § 2255 motion and initially dismissed it for lack of jurisdiction. (ROA.2423–31.) At Bernard's request, the court later amended its order and transferred his motion to this Court under 28 U.S.C. § 1631. (ROA.2442–43.) This appeal followed.

## Summary of the Arguments

I. The district court correctly determined that it lacked jurisdiction over Bernard's third-in-time post-conviction motion because it was a successive § 2255 motion that Bernard had not been authorized to file. Bernard's *Brady* claim asserted a constitutional violation that occurred when the government allegedly failed to disclose evidence before trial. Likewise, his *Napue* claim asserted a violation that allegedly occurred at trial. Under this Circuit's precedent, Bernard's motion was therefore "successive" because the factual predicate for those claims legally ripened before his first § 2255 motion. Accordingly, the district court lacked jurisdiction over Bernard's uncertified motion and properly transferred it to this Court.

II. The district court correctly classified Bernard's Rule 60(b) motion as a successive § 2255 motion. Bernard's motion essentially asks to reopen his initial habeas proceedings to have his new *Brady* and *Napue* claims heard on the merits, which is a quintessential successive § 2255 motion. Even if his motion was classified as a proper Rule 60(b) motion, Bernard has not demonstrated sufficient "extraordinary circumstances" justifying the reopening of his initial § 2255 proceedings. This Court should affirm the district court's transfer of Bernard's motion for lack of jurisdiction.

## Arguments and Authorities

### I. The District Court Lacked Jurisdiction over Bernard's Third-in-Time Motion for Post-Conviction Relief Because It Was an Unauthorized Successive § 2255 Motion.

### A. Standard of Review

This Court reviews de novo a district court's legal determination that a post-conviction motion is an unauthorized successive habeas motion over which it lacks jurisdiction. *Padilla v. United States*, 416 F.3d 424, 425 (5th Cir. 2005).

## B. Argument

The district court correctly determined that it lacked jurisdiction over Bernard's third-in-time post-conviction motion because it was a successive § 2255 motion that Bernard had not been authorized to file. Congress has strictly limited the circumstances under which prisoners may repeatedly challenge their criminal judgments. *See* Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, §§ 105, 106, 110 Stat. 1214, 1220–21 (codified at 28 U.S.C. §§ 2244, 2255). Under AEDPA, a second or successive habeas motion will be dismissed unless it is authorized by a panel of the court of appeals. *See* 28 U.S.C. §§ 2244(b), 2255(h). A habeas motion is "second or successive" if the facts underlying the claim ripened before the initial habeas motion, *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007), and if the motion challenges the same judgment as the initial motion, *Magwood v. Patterson*, 561 U.S. 320, 333 (2010). The factual predicate for the claim "ripens" when the alleged constitutional violation occurs, *see Panetti*, 551 U.S. at 945–47, even if the claim is based on previously undiscovered facts. *Blackman v. Davis*, 909 F.3d 772, 778–79 (5th Cir. 2018) (citing *In re Davila*, 888 F.3d

179, 184–87 (5th Cir. 2018), and *Leal Garcia v. Quarterman*, 573 F.3d 214, 221 (5th Cir. 2009)).

Here, Bernard's *Brady* claim asserted a constitutional violation that occurred when the government allegedly failed to disclose evidence before trial. Likewise, his *Napue* claim asserted a violation that allegedly occurred at trial. Although both claims rely on facts Bernard says he only recently discovered, his motion is still "successive" within the meaning of § 2244(b)(2) because the factual predicate for those claims legally ripened before his first § 2255 motion. *Blackman*, 909 F.3d at 778–79. Thus, his unauthorized third-in-time motion was successive and the district court was required to dismiss it.

Contrary to Bernard's contention (at Br. 24–28), the Supreme Court's reasoning in *Panetti* does not lead to a different conclusion. *Panetti* held that a capital prisoner's second-in-time habeas petition challenging his competency for execution under *Ford v. Wainwright*, 477 U.S. 399 (1986), was not "second or successive" because the *Ford* claim was not ripe until after the petitioner's first habeas petition had been adjudicated on the merits. *Panetti*, 551 U.S. at 943–45. In that "unusual" circumstance, AEDPA does not require "unripe (and, often, factually

unsupported) claims to be raised as a mere formality, to the benefit of no party," in order to avoid the gatekeeping restrictions against second or successive petitions. *Id.* at 945–47.

*Panetti's* distinction between legally ripe and unripe claims rested on whether the claim even existed at the time of the first petition, not—as here—whether its factual predicate was reasonably discoverable. *See United States v. Buenrostro*, 638 F.3d 720, 725–726 (9th Cir. 2011) (*Panetti* applies to claims "based on events that do not occur until a first petition is concluded" but not to claims in which the factual predicate existed but was not discovered at the time of the first petition); *Stewart v. United States*, 646 F.3d 856, 863 (11th Cir. 2011) (claim not second or successive because it was not "based on facts that were merely undiscoverable"). In contrast, the constitutional violation underlying a *Brady* claim occurs at the time the government should have disclosed the exculpatory evidence, before trial. *Blackman*, 909 F.3d at 778–79. "The reason the *Ford* claim was not ripe at the time of the first petition in *Panetti* is not that evidence of an existing or past fact had not been uncovered at that time." *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1260 (11th Cir. 2009). Rather, "no *Ford* claim is ever ripe at the time of

the first petition because the facts to be measured or proven—the mental state of the petitioner at the time of execution—do not and cannot exist when the execution is years away." *Id.* In other words, "*Panetti*'s limited exception to § 2244(b) comports with the plain text of § 2244(b)(2)(B)(i) . . . [because] an unripe claim involves no previously existing 'factual predicate' at all." *Brown v. Muniz*, 889 F.3d 661 (9th Cir. 2018).

Consistently, this Court and every court of appeals to decide this issue have concluded that a *Brady* claim is legally ripe at the time of trial even though important underlying facts are (by definition) normally unknown to the defense at that time. *See Blackman*, 909 F.3d at 778–79; *In re Wogenstahl*, 902 F.3d 621, 627–28 (6th Cir. 2018); *Muniz*, 889 F.3d 661; *In re Pickard*, 681 F.3d 1201, 1205 (10th Cir. 2012); *Quezada v. Smith*, 624F.3d 514, 520 (2d Cir. 2010); *Tompkins*, 557 F.3d at 1259–60; *Evans v. Smith*, 220 F.3d 306, 323–24 (4th Cir. 2000).[1] Because Bernard's

---

[1] Bernard's heavy reliance (at Br. 23, 29–36) on the Eleventh Circuit's decision in *Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018), is unavailing. Consistent with this Circuit and all other circuits, the Eleventh Circuit has held that a *Brady* occurs at trial and is ripe for inclusion in an initial habeas motion. *Tompkins*, 557 F.3d at 1260. While, the panel in *Scott* recently criticized that court's precedent on this point, it also acknowledged the contrary law of the circuit and the full court declined to grant en banc review to revisit the issue. *Scott*, 890 F.3d at 1253–58.

*Brady* and *Napue* claims were ripe at the time of his first motion, *Panetti* is inapposite.

This Court should also reject Bernard's novel argument that his *Brady* claim ripened after his initial habeas proceedings because the prosecutor "continu[ed] to conceal" that evidence. (Bernard Br. 28.) Bernard's claim attacks the prosecutor's failure to disclose exculpatory evidence, which is a defect that "arose" before his initial habeas proceeding. *See Leal Garcia*, 573 F.3d at 224 & n.51. Even to the extent that a material nondisclosure can also "continue" into the post-conviction proceedings, a *Brady*-based claim still legally ripens at trial. Consequently, this Court has held such *Brady*–based claims are successive if raised after the initial § 2255 motion, *Blackman*, 909 F.3d at 778–79, and Bernard's argument cannot be reconciled with that holding. His argument is further undercut by Supreme Court precedent declining to extend *Brady*'s protections to the post-conviction context. *See Dist. Att'y's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68–69 (2009). Because Bernard's *Brady* and *Napue* claims were ripe at the time of his first habeas motion, § 2244(b) applies to those claims.

Accordingly, the district court lacked jurisdiction to entertain his unauthorized successive § 2255 motion.

## II. The District Court Properly Construed Bernard's Purported Rule 60(b) Filing as an Unauthorized Successive § 2255 Motion.

### A. Standard of Review

This Court reviews de novo whether the district court properly construed a prisoner's Rule 60 filing as a successive § 2255 motion. *Coleman v. Stephens*, 768 F.3d 367, 371 (5th Cir. 2014).

### B. Argument

Alternatively, Bernard attempts to circumvent AEPDA's restrictions on successive motions by classifying his motion as a Rule 60(b) motion. His argument should be rejected for two independent reasons. First, as the district court correctly found, Bernard's motion essentially asks to reopen his initial habeas proceedings to have his new *Brady* and *Napue* claims heard on the merits, which is a quintessential successive § 2255 motion. Second, even if his motion was classified as a proper Rule 60 motion, Bernard has not demonstrated sufficient "extraordinary circumstances" justifying the reopening of his initial § 2255 proceedings.

1. Bernard's motion is a quintessential successive § 2255 motion.

Rule 60(b)(6) provides that a court may reopen its earlier judgment if the movant timely shows "any . . . reason that justifies relief" other than the more specific reasons listed in Rule 60(b)(1)–(5).[2] Fed. R. Civ. P. 60(b)(6), (c)(1); *see Gonzalez* v. *Crosby*, 545 U.S. 524, 529, 535 (2005). Under that provision, the movant must "show 'extraordinary circumstances' justifying the reopening." *Gonzalez*, 545 U.S. at 535. But a defendant cannot avoid the precertification requirement in § 2255(h) by purporting to invoke Rule 60(b). *Id.* at 529–30. Rather, a Rule 60(b) motion is a second or successive § 2255 motion subject to AEDPA's limitations when it attacks the "substance of the federal court's resolution of a claim on the merits" and "asks for a second by asserting new grounds for relief." *Gonzalez*, 545 U.S. at 532 & n.4. This classification includes motions that seek to assert new claims or that

[2] Those reasons include: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party; (4) the judgment is void; and (5) the judgment has been satisfied, released or discharged; it is based upon an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable. Fed. R. Civ. P. 60(b)(1)–(5).

proffer newly-discovered evidence in support of a previously denied claim, even if those claims are "couched in the language of a true Rule 60(b) motion." *Id.* at 531, 532–33. Meanwhile, a Rule 60(b) motion is not subject to AEDPA's limitations when it attacks "some defect in the integrity of the federal habeas proceedings" that precluded a merits determination, such as a fraud on the court. *Id.* at 532 & nn.4–5; *Gilkers v. Vannoy*, 904 F.3d 336, 344 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1192 (2019).

Here, Bernard's Rule 60(b) motion was a successive § 2255 motion subject to AEDPA's limitations. As the district court correctly recognized (ROA.2430), Bernard's motion sought to reopen his proceedings to allow him to file an amended § 2255 motion incorporating his new allegations and therefore revisit the merits of the court's denial of his initial § 2255 motion. When a Rule 60(b) motion seeks leave to present such new claims or newly discovered evidence in support of a claim previously denied, "such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." *Gonzalez,* 545 U.S. at 531l *see also Edwards v. Davis*, 865 F.3d 197, 204–05 (5th Cir. 2017) (attempt to bring "new claims under the guise of 'defects in the

integrity of the original habeas proceedings'" is successive). Accordingly, Bernard's Rule 60(b) motion was properly classified as a successive § 2255 motion.

Contrary to his claim on appeal (at Br. 45–50), Bernard's Rule 60(b) motion cannot be properly characterized as an attack on the integrity of his initial § 2255 proceedings. Though "couched in the language of a true Rule 60(b) motion," *Gonzalez*, 545 U.S. at 531, the motion's nominal assertion of a defect in the integrity of his § 2255 proceedings relies exclusively on alleged *Brady* and *Napue* error that he strains to connect to his post-conviction proceedings. But instead of showing procedural concerns about the manner in which the district court adjudicated his initial habeas petition, Bernard's Rule 60(b) motion instead attacks the integrity of the jury's sentence. (Brandon Br. 44–45.) *See Segundo v. Davis*, 757 F. App'x 333, 336 (5th Cir. 2018) (Rule 60(b) motion was a successive habeas petition where claim of ineffective assistance "was the focus of the motion, and reopening the proceedings to relitigate it is the clear objective of the filing"); *Haynes v. Davis*, 733 F. App'x 766, 769 (5th Cir. 2018) ("[W]hile the viability of a petitioner's underlying constitutional claim may be tangentially relevant to the Rule 60(b)

analysis, the Rule may not be used to attack "the substance of the federal court's resolution of a claim on the merits."). The district court therefore properly classified his motion.

Bernard's further suggestion (at Br. 48–50) that his new allegations prove fraud on the court are not well taken.[3] Even if Bernard's complaints about the prosecutor's *Brady* error were true, those circumstances do not amount to "fraud on the court" as understood by Rule 60. "To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion." *Fierro v. Johnson,* 197 F.3d 147, 154 (5th Cir. 1999). "[O]nly the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Id.* Less egregious misconduct, such as the nondisclosure of relevant evidence, will not ordinarily rise to that level. *Id.*; *see also Lave v. Davis*, 655 F. App'x 255, 259 (5th Cir. 2016).

[3] This Court has not extended this principle beyond habeas review of state judgments, so it is not clear that it applies to § 2255 proceedings, where the alleged fraud occurred on the same court as the original trial.

Bernard falls far short of proving any fraud on the court. Contrary to his inflammatory allegations of intentional fraud by the trial prosecutor, the record supports that the gang diagram was disclosed along with all other government exhibits to the defense. The diagram was identified as an exhibit on the government's exhibit list:

163. Photo of Todd Alan Bagley

164. Photo of Stacie Lynn Bagley's watch as recovered from Tony Sparks' jacket

165. Diagram depicting the members of the 212 PIRU Bloods

166. Diagram depicting positions of defendants at the time of the shooting - Chris Lewis

167. Video tape from the ATM at Mickey's Store #22, Westcliff, Killeen

(ROA.230–39.) Bernard's co-defendant's counsel acknowledged the government's exhibits were provided to him before trial (ROA.2524), and remarked during a discussion about the exhibits that the defense had "been given complete discovery." (ROA.4132.) Additionally, there is no evidence that trial prosecutor had any knowledge about the potential testimony of a tangentially-involved local gang investigator, rendered 18 years after the trial took place. Under these circumstances, the trial prosecutor's conduct was hardly "corrupt conduct." *Fierro*, 197 F.3d at 155.

Moreover, Bernard's *Brady* allegations did not taint the appellate attorneys who responded to Bernard's § 2255 motion, who were not involved in the original trial proceedings. For a claim of fraud on the court, the relevant conduct is that of the parties during the § 2255 proceedings. *Fierro*, 197 F.3d at 154–56. Bernard, however, has not shown that the appellate attorney who represented the government during the initial § 2255 proceedings obfuscated the record or hid evidence and therefore cannot show any fraud on the court during his § 2255 proceedings. Because Bernard's Rule 60(b) motion seeks a second opportunity for a favorable merits determination by asserting new arguments and evidence not presented in the initial § 2255 proceedings, he may present those new claims only if this Court certifies that his motion qualifies under one of the enumerated exceptions for a successive § 2255 motion. *See* § 2255(h). Bernard did not obtain precertification, and so the district court correctly transferred his alternative motion.

2. Even under Rule 60(b), Bernard has not demonstrated sufficient "extraordinary circumstances" justifying the reopening of his initial § 2255 proceedings.

Even if Bernard's claims were not subject to denial for constituting an unauthorized successive § 2255 motion, they would also be denied

under Rule 60(b). A movant seeking relief under Rule 60(b)(6) must meet two minimum requirements. First, the movant must show that his claim could not have been brought through one of Rule 60(b)'s first five subsections. *United States v. Fernandez*, 797 F.3d 315, 319 (5th Cir. 2015). Second, the movant must demonstrate "extraordinary circumstances" justifying the reopening of a final judgment. *Gonzalez*, 545 U.S. at 535. "Such circumstances will rarely occur in the habeas context." *Id.* Bernard contends (at Br. 44–45) that the government's "continuing" failure to disclose the gang diagram (and unrendered testimony describing that diagram) during his initial habeas proceedings satisfies Rule 60(b)(6). But even assuming his claim could not have been brought under another subsection,[4] Bernard has failed to show extraordinary circumstances justifying the reopening of his initial habeas proceedings.

[4] Bernard admits (at Br. 40–41) that he could have raised his claims under subsections (b)(1) through (b)(3), but the court was barred from considering his motion on those grounds because his motion was untimely. *See* Fed. R. Civ. P. 60(c)(1). Neither this Court nor any other circuit have equitably tolled this timeliness requirement, much less in the habeas context. *See also Norwood v. Vance*, 517 F. App'x 557, 558 (9th Cir. 2013) (enforcing requirement); *Richards v. Ctr. County Transp. Auth.*, 540 F. App'x 83, 85 (3d Cir. 2013) (same). As Bernard acknowledges (at Br. 42–43), he cannot shoehorn these untimely claims through subsection (b)(6). *Fernandez*, 797 F.3d at 319.

Under *Brady,* the prosecution must disclose all favorable evidence that is material either to guilt or to punishment. *Brady*, 373 U.S. at 85. Evidence is "material" only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999). "A 'reasonable probability' of a different result [exists] when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Bernard's *Brady* allegation fails to constitute an extraordinary circumstance for at least two reasons. First, his claim is based on evidence that was not actually suppressed by the prosecution. The government made its file fully available to Bernard's and Vialva's trial counsel for inspection. (ROA.95, 99, 1741, 2513.) As part of this disclosure, the gang diagram was disclosed to the defense along with all other government exhibits. (*See* ROA.230–39, 2524, 4132.)[5] Likewise, Hunt's testimony was not suppressed because the tangentially-involved local gang investigator's descriptions of the diagram in 2018 was not in

[5] Following the defense's repeated objections to the admission of gang affiliation evidence, the prosecutor decided not to introduce the exhibit at trial. The prosecutor's concern proved prescient: Bernard later challenged the admission of gang affiliation evidence in his initial § 2255 proceedings. (ROA.1298–1301.)

the government's possession in 2000. *Cf. United States v. Locascio*, 6 F.3d 924, 929 (2d Cir. 1993) (rejecting claim that reports prepared by agents working on different cases and coming to prosecutors after trial were imputed to the prosecution); *see also United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) (materials in possession of state government, especially in unrelated investigations, not imputed to prosecution). And even if this unrendered testimony could be imputed to the prosecution, the government had no duty to disclose information to Bernard about his own status in a gang in which he actively participated. *See United States v. Vasquez-Hernandez*, 924 F.3d 164, 171 (5th Cir. 2019) (government "bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence") (citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)). There was therefore no *Brady* violation, much less extraordinary circumstances justifying the reopening of Bernard's initial habeas proceedings.

Second, Hunt's testimony and the diagram depicting the gang's structure were not material. Evidence is not material if it is merely cumulative of other evidence. *See Spence v. Johnson*, 80 F.3d 989, 995

(5th Cir. 1996). Hunt testified that the chart identifies "the leaders"[6] and "the status of the members as it goes down" (ROA.18-50225.1498, 1500), and she identified Bernard's placement "at the very bottom of the chart of pyramid." (ROA.18-50225.1501.) The jury was aware, however, that the gang had "leaders" and that Vialva and Sparks had a heightened status within the gang's structure. Witness testimony established that the gang's founders were "at the top of a matrix for this group." (ROA.5380, 5382, 5366.) Another gang member identified one of those same founders as the gang's "crown holder" or leader. (ROA.4798, 4803–04.) And Sparks and Vialva were described as "climbers" who attempted to elevate their status in the gang. (ROA.5383.) Testimony established that Sparks and Vialva were "in charge" during the gang's attempted carjacking the night before the murders (ROA.5382–83), further suggesting a hierarchy in which Sparks and Vialva had elevated roles.

To be sure, some witnesses testified they did not know the gang's leader. (ROA.4751–52.) And one gang member denied the gang had a leader, testify that "everybody was considered equal." (ROA.5364.) But

[6] Hunt interchangeably referred to the gang members at the top of the chart as both "leaders" and "originators." (ROA.2320, 2322; *see also* ROA.2328 (describing Prince Presley as "the original leader").)

that same member qualified his testimony, explaining that the founders had prospectively declared the gang would have no "crown holders or any other forms of levels . . . because it caused too much confrontation." (ROA.5366–67.) Texas Ranger Aycock explained that Vialva's and Sparks' ambition—their "climbing"—later caused problems within that aspirational structure. (ROA.5882–83.) Viewing the evidence in its totality, the jury was aware Vialva and Sparks had a heightened status within the gang's structure.

But even if the jury had not been made aware of this evidence, Bernard's claim that it "probably would have foreclosed" his death sentence (at Br. 44–45) strains credulity. None of the proffered information would have materially affected the jury's guilty verdict or recommended sentence. Even absent evidence of the gang's structure, the jury was well aware that that Vialva took a leadership role during the offense and that Bernard had a marginally lesser role. Other gang members described Vialva as the "scary" one of the group who had murdered the Bagleys. (ROA.5394.) In contrast, Bernard was described as a "person who would assist and help" other gang members. (ROA.5394.) Bernard's counsel expressly argued during the penalty

phase that this testimony demonstrated that Bernard was less culpable than Vialva and Sparks. (ROA.5807.)

Moreover, the trial evidence overwhelmingly showed that Vialva directed the actions of the other gang members—including Bernard—during every stage of the crime. Vialva and Sparks planned the carjacking outside Bernard's presence (ROA.4446–47, 4872–73), and Vialva only later recruited Bernard to participate (ROA.4883, 4884–85, 4887). Vialva selected the gang member who would ask the Bagleys for a ride. (ROA.4446.) After the Bagleys agreed to give them a ride, it was Vialva who pulled out a gun and pointed it toward Todd Bagley's head (ROA.4892). Vialva demanded Todd Bagley's wallet. (ROA.4893.) Viala was "excited" to force the Bagleys into their trunk and assume the driver's seat in their car. (ROA.4898.) It was Vialva who first used the Bagley's ATM card, and got mad when the Bagleys provided the wrong PIN number, threatening to kill them if they did not provide the correct number. (ROA.4899–4900.) When Sparks got into an argument with another gang member during the carjacking, he threatened to tell Vialva when they returned to the car (ROA.4903–04), further indicating Vialva's leadership role. Bernard was not present during these events.

Once Bernard rejoined the group, Vialva was the person who made the decision "to burn the car and kill the people." (ROA.4463–64, 4913–14.) Vialva instructed Bernard to get the gasoline that would be used to "burn the car." (ROA.4465, 4466–67, 4471.) After Bernard poured the lighter fluid over the Bagley's car, Vialva announced "they was going to die," directed another gang member to open the trunk, and shot Todd Bagley in the head. (ROA.4482, 4484–85.) Ultimately, the jury was already aware of evidence that Vialva had more authority than Bernard, that he directed the others during the crime, and that he was more culpable for the carjacking and murders.[7] But the jury still recommended a death sentence against Bernard for his role in Stacie Bagley's murder. None of the evidence Bernard proffers rebuts the evidence of his strong association with the gang, that he willingly agreed to participate in the carjacking, that the weapon used to carjack and shoot the Bagleys belonged to him, that he bought lighter fluid with the money Vialva gave him, that he helped pour lighter fluid in the Bagley's car while the Bagleys were held captive in the trunk, that Stacie Bagley died from the

[7] The jury recommended death sentences for Vialva on the carjacking and both murder counts. *Bernard*, 299 F.3d at 473.

resulting fire, or that Bernard provided and drove the getaway car. Bernard cannot demonstrate that the nominal evidence about the gang's structure offered at Sparks' resentencing would have materially affected the jury's sentence. Accordingly, even if his motion was not a successive § 2255 motion subject to AEDPA's limitations, Bernard has failed to show adequate circumstances justifying a reopening of his initial § 2255 proceedings under Rule 60(b). The district court properly found it lacked jurisdiction over the motion.

3. Bernard's claim that the restrictions in § 2255(h) violate the suspension clause is contrary to Circuit precedent.

Finally, Bernard's contention that AEDPA's restrictions on successive § 2255 motions violate the Suspension Clause (at Br. 51–52) is unavailing.[8] This Court has already rejected similar challenges to those same restrictions. *See Wesson v. U.S. Penitentiary Beaumont*, 305 F.3d 343, 347 (5th Cir. 2002) (citing *Reyes-Requena v. United States*, 243 F.3d 893, 901 n.19 (5th Cir. 2001); *see also Felker v. Turpin*, 518 U.S. 651, 663–64 (1996) (rejecting Suspension Clause challenge to AEDPA's

[8] "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

restrictions on second or successive § 2254 petitions). Bernard has had and pursued multiple opportunities for collateral review, and may continue to raise new challenges in the future so long as he satisfies the statutory requirements for successive motions. There has been no violation of the Suspension Clause.

Bernard argues that these statutory limitations "impermissibly suspend the writ" (at Br. 52) because they do not allow him limitless rounds of review of his constitutional challenges to his sentence. That argument wrongly presumes that the Suspension Clause applies to successive applications for statutory post-conviction habeas corpus. *See Benefiel v. Davis*, 403 F.3d 825, 827 (7th Cir. 2005) ("What is protected from suspension is the writ that limits a person's detention by the executive branch without trial."); *see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1095 (11th Cir. 2017) (en banc) (rejecting argument that the Suspension Clause requires the availability of successive habeas motions); *cf. Felker*, 518 U.S. at 664 (reserving question). A prisoner's inability to obtain successive habeas corpus relief on the merits is not a suspension of the writ. This Court should therefore reject his claim.

## Conclusion

For these reasons, the district court's transfer of Bernard's post-conviction motion for lack of jurisdiction should be affirmed.

Respectfully submitted,

John F. Bash
United States Attorney

Joseph H. Gay, Jr.
Appellate Chief

/s/ ***Elizabeth Berenguer***
Elizabeth Berenguer
Assistant United States Attorney

## Certificate of Service

I certify that on the 21st day of February, 2020, I filed this document with the Fifth Circuit Court of Appeals using the CM/ECF filing system, which will cause a copy of the document to be electronically delivered to the movant-appellant's counsel, Robert C. Owen and John R. Carpenter.

//s/ ***Elizabeth Berenguer***
Elizabeth Berenguer
Assistant United States Attorney

## Certificate of Compliance

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6,383** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using **Microsoft Word 2016 in 14-point Century Schoolbook.**

//s/ ***Elizabeth Berenguer***
Elizabeth Berenguer
Assistant United States Attorney