No. 19-70021

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRANDON BERNARD,

Defendant-Appellant.

On appeal from the United States District Court
for the Western District of Texas at Waco
Crim. No. 6:99-CR-70-2, Civ. No. 6:04-CV-164

The Honorable Alan D. Albright,
United States District Judge

## PETITION FOR REHEARING EN BANC
**[THIS IS A DEATH PENALTY CASE]**
**[EXECUTION SCHEDULED FOR DECEMBER 10, 2020]**

Robert C. Owen
Law Office of Robert C. Owen, LLC
53 West Jackson Blvd., Suite 1056
Chicago, IL 60604
Phone: (512) 577-8329
Email: robowenlaw@gmail.com
Texas Bar No.: 15371950

John R. Carpenter
Asst. Federal Public Defender
1331 Broadway, Suite 400
Tacoma, Washington 98402
Phone: (253) 593-6710
Email: john_carpenter@fd.org
Washington Bar No.: 23301

Attorneys for Defendant-Appellant Brandon Bernard

# CERTIFICATE OF INTERESTED PERSONS

The following listed persons have an interest in the outcome of this case, although none of these interests are financial. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

Brandon Bernard, Defendant-Appellant;

Robert C. Owen and John Carpenter, counsel for Mr. Bernard in this appeal and in the court below (and, with respect to Mr. Owen, on direct appeal);

Robert H. Gombiner, counsel for Mr. Bernard in the court below;

Walter M. Reaves, Jr., counsel for Mr. Bernard on direct appeal;

Russell D. Hunt, Sr., and Russell D. Hunt, Jr., trial counsel for Mr. Bernard;

Mark R. Stelmach, counsel for the Government in the court below;

Angela J. Moore, counsel for the Government on direct appeal;

James William Blagg, Mark L. Frazier, and Capt. Scott L. Frost, trial counsel for the Government;

Hon. Alan D. Albright, Jr., United States District Judge, § 2255 judge; and

Elizabeth Berenguer, counsel for the Government on this appeal.

**STATEMENT OF COUNSEL**
**(Fed. R. App. Proc. 35(B)(1))**

This appeal involves the following questions of exceptional importance: In a federal capital case, can the Government foreclose judicial review of its *Brady*[1] and *Napue*[2] violations by successfully hiding critical exculpatory material throughout the trial and the pendency of an initial § 2255 proceeding? In this case, that means the probable execution of someone who, absent the Government's misconduct, would likely not have been sentenced to death. The panel opinion effectively licenses such government misconduct. As Judge Weiner characterized an analogous issue, this is a "Kafkaesque" outcome best described as an "absurdity." *In re Webster*, 605 F.3d 256, 259 (5th Cir. 2010) (Weiner, J., concurring). En banc review is appropriate because the Fifth Circuit precedent applied by the panel conflicts with *Panetti v. Quarterman*, 551 U.S. 930 (2007). Additional questions of exceptional importance justifying en banc review include whether Rule 60(b) provides a mechanism that empowers a district court to hear this issue, and, if not, whether forever foreclosing any judicial review of the Government's misconduct would result in an unconstitutional suspension of the writ.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................i

STATEMENT OF COUNSEL ..................................................................... ii

TABLE OF AUTHORITIES ........................................................................iv

ISSUES MERITING EN BANC CONSIDERATION.............................................1

PRIOR PROCEEDINGS ............................................................................2

FACTS .................................................................................................3

WHY REHEARING EN BANC IS WARRANTED .............................................7

    I.     Under *Panetti*, Bernard's motion to the district court should not be deemed a second motion subject to 28 U.S.C. § 2255(h). ...............7

    II.    Whether Bernard should be permitted to advance his claim under Fed. R. Civ. P. 60(b) to prevent the Government from carrying out an unconstitutionally secured death sentence is a question of exceptional importance. ...................................................13

    III.   Whether this Court can foreclose a capitally sentenced federal prisoner from ever challenging governmental misconduct that led to his death sentence without unconstitutionally suspending the writ is a question of exceptional importance................................15

CONCLUSION ......................................................................................16

CERTIFICATE OF SERVICE .....................................................................17

CERTIFICATE OF COMPLIANCE..............................................................18

SLIP OPINION

APPENDIX

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blackman v. Davis*,
  909 F.3d 772–73 (5th Cir. 2018) ........................................................ 10, 11, 12

*Brady v. Maryland*,
  373 U.S. 83 (1963) .............................................................................. *passim*

*Douglas v. Workman*,
  560 F.3d 1156 (10th Cir. 2009) .................................................................. 9

*Ford v. Wainwright*,
  477 U.S. 399 (1986) .................................................................................. 8

*Gamboa v. Davis*,
  782 Fed.Appx. 297 (5th Cir. 2019) .......................................................... 14

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005) ................................................................................ 14

*In re: Bernard, No. 19-50837*,
  2020 WL 5494479 (5th Cir. Sept. 9, 2020) .............................................. 4

*In re Davila*,
  888 F.3d 179 (5th Cir. 2018) .................................................................. 10

*In re Edwards*
  865 F.3d 197 (5th Cir. 2017)................................................................... 14

*In re Pickard*,
  681 F.3d 1201 (10th Cir. 2012) .............................................................. 14

*In re Webster*,
  605 F.3d 256 (5th Cir. 2010) .................................................................. ii

*Johnson v. Dretke*,
  442 F.3d 901 (5th Cir. 2006) .................................................................. 10

*Leal Garcia v. Quarterman*,
  573 F.3d 214 (5th Cir. 2009) .............................................................. 11, 12

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ...................................................................................... 14

*Long v. Hooks*,
    972 F.3d 442 (4th Cir. 2020) ........................................................................ 8, 9

*Monk v. Huston*,
    340 F.3d 279 (5th Cir. 2003) .......................................................................... 12

*Napue v. Illinois*,
    360 U.S. 264 (1959) ................................................................................. *passim*

*Panetti v. Quarterman*,
    551 U.S. 930 (2007) ................................................................................. *passim*

*Scott v. United States*,
    890 F.3d 1239 (11th Cir. 2018) ................................................................ *passim*

*Shields v. Norton*,
    289 F.3d 832 (5th Cir. 2002) .......................................................................... 12

*Sparks v. United States*,
    2018 WL 1415775 (W.D. Tex., 2018) ............................................................. 5

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................................ 12

*Tompkins v. Secretary, Department of Corrections*,
    557 F.3d 1257 (11th Cir. 2009) ..................................................................... 10

*United States v. Bernard*,
    299 F.3d 467 (5th Cir. 2002) ....................................................................... 2, 6

*United States v. Bernard*,
    762 F.3d 467 (5th Cir. 2014) ........................................................................... 2

*United Transp. Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000) .......................................................................... 12

*Wooten v. McDonald Transit Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) .......................................................................... 14

**FEDERAL STATUTES**

28 U.S.C. § 1631 ................................................................... 3

28 U.S.C. § 2244 .................................................................. 10

28 U.S.C. § 2255 ............................................................. *passim*

**RULES**

5th Cir. R. 32 ..................................................................... 18

Fed. R. App. Proc. 35 ...................................................... ii, 18

Fed. R. Civ. P. 60 ......................................................... *passim*

**OTHER**

Black's Law Dictionary (10th ed. 2014) ............................... 12

U.S. Const., Art. I, Sec. 9, Cl. 2 .................................... 15, 16

**ISSUES MERITING EN BANC CONSIDERATION**

The fundamental issue is this: Can the Government, by hiding critical exculpatory material not only during trial but throughout the pendency of § 2255 proceedings, prevent the defendant from ever seeking relief for those constitutional violations? The panel answered that question "yes." But a proper analysis of *Panetti v. Quarterman*, 551 U.S. 930 (2007), shows that, in such circumstances, a second-in-time § 2255 motion is not successive.

A second issue is whether the Government's hiding of *Brady* material during a § 2255 proceeding, and falsely claiming in that proceeding that it had open file discovery pre-trial, is a defect in the integrity of the habeas proceedings, such that the district court has authority to consider that *Brady* claim under Rule 60(b).

A related issue is whether a ruling that thus allows the Government to evade accountability for its wrongdoing unconstitutionally suspends the writ of habeas corpus when a defendant (1) could not have his sentencing-phase *Brady* and *Napue* claims reviewed in his initial § 2255 proceeding, because the Government continued to conceal the *Brady* material; (2) cannot have them reviewed via a subsequent § 2255 motion, on the theory that it is second or successive notwithstanding *Panetti*'s analysis; (3) cannot pursue a second or successive motion through § 2255(h)(1), because the constitutional violations affected "only" his death sentence, not his conviction; and (4) cannot obtain relief under Rule 60(b), whether

1

due to untimeliness (again, because the Government managed successfully to keep the *Brady* material hidden) or because his 60(b) motion is deemed a second or successive § 2255 motion.

## PRIOR PROCEEDINGS

Brandon Bernard was convicted of carjacking and first-degree murder and, in contrast to his codefendant Christopher Vialva, sentenced to death for only one of three death-eligible counts. This Court affirmed.[3] Bernard sought post-conviction relief on grounds that included alleged *Brady* and *Napue* violations involving Bernard's culpability relative to codefendants, as well as cumulative prejudice from numerous instances of alleged prosecutorial misconduct. ROA.1361-72. Without granting discovery or a hearing, the district court denied all relief and refused leave to appeal. This Court affirmed.[4]

Bernard subsequently learned that the Government had suppressed critical evidence not only during the trial but throughout the pendency of the original § 2255 proceeding. The suppressed evidence directly contradicted the Government's arguments for why Bernard deserved death.

---

[3] *United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002).

[4] *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014).

Bernard brought a new § 2255, which he contended was not successive under *Panetti* because the Government's *Brady* violation during the course of the previous § 2255 proceedings prevented him from bringing it earlier. ROA.2245-2416. The district court held that this Court's precedent foreclosed what it called Bernard's "compelling" argument. The matter was transferred to this Court. *See* 28 U.S.C. § 1631. ROA.2426. Bernard appealed, and the panel affirmed. Slip Opinion at 1-4.

**FACTS**

To secure a death sentence against Brandon Bernard, the Government argued that the teenage gang to which he belonged had no formal hierarchical structure, but that Bernard nevertheless yearned to be a "top dog" within it. ROA.5366-67, 5382, 5819. At no point did it suggest that Bernard was a mere peripheral member of the gang. On the contrary, the Government's central theme in its case for death was that Bernard was an irredeemable gangster, who would continue to embrace that identity in prison. ROA.5729-31.[5]

---

[5] All this speculation has proven false. Bernard has not been active in any gang, but has been a model prisoner. Mark Bezy, formerly the warden at the very institution where Bernard is now incarcerated, reviewed Bernard's complete BOP file in 2016. Bezy noted that Bernard has been allowed to work as an orderly, which reflects prison officials' confidence in his trustworthiness and good behavior, and that Bernard remarkably had not incurred a single disciplinary infraction during his time in the BOP (then 16 years). ROA.2399-40 (*Declaration of Warden Mark Bezy (Ret'd)* at 2 (August 20, 2016)). In fact, beyond simply staying out of trouble, Bernard has used his time constructively, counseling other youth not to be led astray. ROA.2401-12 (*Declarations of David and Michael Boyd and accompanying magazine article documenting Bernard's good works while in prison*).

Unbeknownst to the defense, the Government's own gang expert, Killeen Police Department Sergeant Sandra Hunt, had told the Government pretrial that the gang did in fact have a hierarchical structure and that Bernard occupied its very lowest level – far below every other charged defendant. ROA.2414, 2321; 2313-2331.

Despite claiming to have an open file discovery process during the trial, the Government never disclosed this exculpatory expert opinion[6] to Bernard's trial team. The Government then abruptly closed its supposed "open file" once it secured a death sentence, never once permitting counsel on collateral review to inspect the Government's file. And after closing its file, the Government defeated Bernard's *Brady* claim in the § 2255 proceeding, citing its claimed "open file" policy from trial. ROA.2270-2273, 2415-16.

Bernard's post-conviction counsel only discovered Sgt. Hunt's expert opinion by scouring the record of the 2018 resentencing of juvenile codefendant

---

[6] In a case related to the current appeal, where Bernard sought leave to file a successive § 2255 motion, the same panel asserted that Bernard could not establish that the *Brady* material was "newly discovered," a threshold requirement for one basis for filing a successive petition. *In re: Bernard*, No. 19-50837, 2020 WL 5494479, at *1 n. 2 (5th Cir. Sept. 9, 2020). The panel's theory was that Bernard already knew he was not a gang leader. But this view totally misconceives the nature of the suppressed evidence. The newly discovered *Brady* material was that a *law enforcement expert had concluded* that Bernard was at the bottom of the gang hierarchy. This is the material fact that the Government suppressed, one that had significant impact on the outcome of the penalty phase.

Tony Sparks. By this time, however, Bernard's original § 2255 motion had long been denied. The Government only disclosed Hunt's opinion during Sparks' 2018 resentencing because it showed that Sparks was a high-ranking member of the gang, which the Government argued was a fact that supported the harshest possible sentence. When announcing Sparks' sentence, the sentencing judge explicitly cited Hunt's testimony as important and credible.[7]

The suppressed information was highly favorable to Bernard. Sgt. Hunt's expert analysis showed that three of Bernard's codefendants ranked high in the gang, where they would likely have acted as leaders in its criminal activity. In contrast, Bernard occupied the very lowest tier of the hierarchical structure; he was positioned to fall in line and do as he was told.[8]

The suppressed information was also material, because it is reasonably probable that disclosure of Sgt. Hunt's expert conclusions about the gang's structure

---

[7] ROA.2342 (Memorandum Opinion Regarding Resentencing, *Sparks v. United States*, 2018 WL 1415775, at *6 (W.D. Tex. 2018) (expressly crediting Sgt. Hunt's testimony to find that Sparks had acted as an enforcer and was "not a tangential participant in the gang"), and ROA.2370-71 (Oral Ruling at 12, lines 15-16 (March 19, 2018)).

[8] A copy of a gang hierarchical chart produced by Sgt. Hunt at the time of Bernard's trial, ROA.2414, is attached. Appendix at 01. Like Sgt. Hunt's expert testimony itself, ROA 2313-2331, the Government has never claimed that it provided this chart to any member of Bernard's defense team. ROA.2270-2273, 2415-16; *see also* Reply Brief at 6-10, *United States v. Bernard*, No. 19-70021, doc. 515341103 (5th Cir. March 11, 2020) (highlighting how the Government's Response never claims that it disclosed either Sgt. Hunt as an exculpatory witness or her opinions in any form).

and Bernard's minimal role would have changed the sentencing verdict. Proof of this materiality can be seen by this Court's reliance on Bernard's claimed immersion in gang culture as a basis to uphold his death sentence. *Bernard*, 299 F.3d at 482. Given the Government's emphasis on purported gang ties throughout the trial, Sgt. Hunt's expert opinion would have cast Bernard's connection to the gang in an entirely different light. It could easily have persuaded jurors that Bernard's gang links were so weak that he was unlikely to seek out gang involvement in prison if his life were spared.

Even without knowing that a police expert had identified Bernard as occupying the gang's lowest rank, the jury spent nearly as much time deciding on Bernard's one death sentence as it did on its remaining sentencing verdicts for both defendants.[9] Expert evidence that Bernard occupied the gang's lowest rung would almost certainly have persuaded at least one juror to vote for life, since jurors were required to evaluate Bernard's future dangerousness and whether other equally culpable criminal actors were not facing death. And the argument that the jurors

---

[9] Jurors began deliberations at 4:15 p.m. on June 12, working until 7:00 p.m. ROA.5842, 819, 821. In that interval, they sentenced Vialva to death on all three death-eligible counts, and sentenced Bernard to life imprisonment on two. ROA.301, 314, 327 (Vialva death verdicts, dated June 12); ROA.341, 354 (Bernard life verdicts, same). Deliberations resumed the next morning at 9:00 a.m., ROA.821, with only Bernard's final sentence left to determine. That verdict required over two additional hours of deliberations ROA 822; *see also* ROA.366 (Bernard's single death verdict, dated June 13).

likely would have found Sgt. Hunt's opinion evidence compelling is buttressed by the fact the sentencing judge declared it so when resentencing Mr. Sparks, see n. 7, *supra*.

### WHY REHEARING EN BANC IS WARRANTED

**I.    Under *Panetti*, Bernard's motion to the district court should not be deemed a second motion subject to 28 U.S.C. § 2255(h).**

As a result of the panel's decision, Brandon Bernard confronts an execution that he would not face if the Government had played by the rules. The panel decision held that, because the law enforcement expert's opinion existed at the time of Bernard's trial (albeit unconstitutionally hidden away in the Government's records), Brandon cannot now seek legal redress for the misconduct that landed him on federal death row. Slip Opinion at 3-4.

Under the panel opinion's reasoning, it is of no moment that the reason Bernard could not have brought his motion earlier was that the Government had concealed Sgt. Hunt's expert opinion throughout the trial and collateral review processes. This analysis cannot be squared with *Panetti v. Quarterman*, 551 U.S. 930 (2007), which treats unripe claims such as Bernard's *Brady* claim as non-successive.

"A second or successive motion" for relief is statutorily barred unless it (1) contains newly discovered evidence sufficient to establish the prisoner's innocence, or (2) relies on a previously unavailable and retroactive "new rule of constitutional

law[.]" 28 U.S.C. § 2255(h). Because Bernard's claim rests on long-settled law and relates to execution, not innocence, he cannot meet these exceptions.

However, *Panetti* reaffirmed that not every second-in-time petition should be deemed successive. Specifically, the Court held that a prisoner need not raise in his initial habeas petition the possibility that he may become incompetent at a later date, and thus be barred from execution under *Ford v. Wainwright*, 477 U.S. 399 (1986). To evaluate whether a particular claim is barred under the successive petition doctrine, *Panetti* directs the courts to evaluate the "implications for habeas practice" of categorizing the particular claim as successive. *Panetti*, 551 U.S. at 945.

*Panetti*'s logic and analysis compels the conclusion that Bernard's 2018 motion was not successive and thus that the district court had jurisdiction to entertain it. *Scott v. United States*, 890 F.3d 1239 (11th Cir. 2018), recognizes as much. In *Scott*, the court examined the situation where a prosecutor not only hides material exculpatory or mitigating evidence prior to trial, but manages to do so until the defendant's first post-conviction proceeding concludes. The court started with the indisputable premise that under *Brady* "a prosecutor's suppression of material evidence favorable to the accused amounts to a foul blow" that "deprives [him] of a fundamentally fair trial." 890 F.3d at 1243. As a result, allowing valid *Brady* claims to proceed "is critically important to maintaining the integrity of our judicial system." *Id.; see also Long v. Hooks,* 972 F.3d 442, 486 (4th Cir. 2020), as amended (Aug.

8

26, 2020) (Wynn, J, concurring) (calling for reconsideration of Fourth Circuit precedent in light of the analysis in *Scott*).

The injury to the legitimacy of the legal system inflicted by an initial *Brady* violation is compounded where the Government succeeds in concealing the violation throughout the prisoner's initial § 2255 proceeding. In such circumstances, "precluding the filing of a second-in-time petition addressing the newly discovered violation is doubly wrong." *Scott*, 890 F.3d at 1244. Specifically, barring such a second-in-time motion "rewards the government for its unfair prosecution" by immunizing the improperly obtained judgment from correction. *Id.* A contrary conclusion "eliminates the sole fair opportunity for these petitioners to obtain relief," and not only "corrodes faith in our system of justice" but "undermines justice itself," such that it "cannot be allowed." *Id.* at 1243; *see also Long,* 972 F.3d at 486 (Wynn, J, concurring); *Douglas v. Workman*, 560 F.3d 1156, 1195 (10th Cir. 2009) (in enacting AEDPA, Congress "cannot" have aimed to encourage prosecutors to conceal exculpatory evidence "until it is too late, preventing the habeas petitioner from asserting the existence of such [exculpatory evidence] in his initial habeas petition and thereby insulating egregious government behavior from any habeas review").

The panel opinion did not address *Scott* at all, but instead cited a competing Eleventh Circuit opinion – one that the *Scott* court ruled prevented it from

9

authorizing the relief that it believed justice demanded. Slip Opinion at 3 (citing *Tompkins v. Secretary, Department of Corrections*, 557 F.3d 1257 (11th Cir. 2009)). But *Tompkins* did not even apply the *Panetti* analysis and thus ultimately is "fatally flawed[.]" *See Scott*, 890 F.3d at 1258. This Court should abjure *Tompkins* and adopt *Scott*'s reasoning.

The panel opinion also relied on *Blackman v. Davis*, 909 F.3d 772, 572–73 (5th Cir. 2018), for the proposition that a second-in-time petition raising *Brady* and *Napue* claims was successive even though the claims relied on previously undiscovered facts. Slip Opinion at 4. But like *Tompkins* and unlike *Scott*, *Blackman* did not engage in any detailed analysis of *Panetti*'s rationale, citing it only for the proposition that satisfying 28 U.S.C. § 2244(b)(2)(B) is a jurisdictional prerequisite. Nor did *Blackman* independently analyze Blackman's assertion that his *Brady* claim was not successive because the Government's continued suppression of the exculpatory information had prevented him from raising the claim earlier. Instead, the *Blackman* court erroneously stated that this Court had already "conclusively" rejected that view, citing three cases.

But none of those three cases addressed the issue presented by this case. Two of them, *In re Davila*, 888 F.3d 179, 182 (5th Cir. 2018), and *Johnson v. Dretke*, 442 F.3d 901 (5th Cir. 2006), are off-point because the petitioners in those cases never contended that the second or successive gateway should not apply, but only that they

met the gateway requirements. The third case, *Leal Garcia v. Quarterman*, 573 F.3d 214, 221 (5th Cir. 2009), which the panel opinion cited for the proposition that it had previously made clear that "claims based on a *factual* predicate not previously discoverable are successive[,]"[10] does not support the panel decision's broad reading of it. First, *Leal* was not addressing factual matters that the Government unconstitutionally suppressed in a federal death penalty case: the reading of AEDPA that *Leal* was rejecting was the assertion that *any* new evidence would be sufficient to avoid applying that bar. Second, the *Leal* court was careful not to issue definitive rulings about the types of claims not before it, instead speaking generally of claims that, *e.g.*, "tend to be labeled successive," "tend to be deemed non-successive," or "may be non-successive." 573 F.3d at 222. Nor did the *Leal* court conduct the detailed analysis *Panetti* calls for, which, among other things, requires examining the "implications for habeas practice" of *Brady* claims where the *Brady* violation continues throughout the § 2255 proceeding. *See Panetti*, 551 U.S. at 945; *see also Scott*, 890 F.3d at 1247-59 (conducting that detailed analysis). Thus, *Blackman*'s conclusion, reached without analysis, was not compelled or even supported by precedent.

---

[10] Slip Opinion at 3 (emphasis in *Leal Garcia*).

In sum, only the en banc Court can set aside reliance on *Blackman* and its underpinnings and correct this Circuit's approach to the important issue presented here. The *Leal* court, we note, made one comment strongly supporting Bernard's position: it observed that if "the purported defect did not arise, *or the claim did not ripen*, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive." *Id.* at 222 (emphasis added). The usual definition of "ripen" requires the facts be "developed sufficiently to permit an intelligent and useful decision to be made." *Scott*, 890 F.3d at 1256 (quoting *Ripeness*, Black's Law Dictionary (10th ed. 2014)). This definition is consistent with the definitions of "ripeness" the Supreme Court and this Court have endorsed. *See, e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) (claim unripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks and citation omitted); *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (to be ripe, claim "must not be premature or speculative"); *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) ("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required"; claim is unripe "when the case is abstract or hypothetical") (citation omitted); *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial

review.") Of course, Bernard's *Brady* claim was not ripe, under these definitions, until the Government stopped hiding Sgt. Hunt's opinions.

**II.      Whether Bernard should be permitted to advance his claim under Fed. R. Civ. P. 60(b) to prevent the Government from carrying out an unconstitutionally secured death sentence is a question of exceptional importance.**

Whether Bernard can bring this motion under Rule 60(b) is also a question of exceptional importance. The panel opinion ruled that he could not, basically concluding that Bernard's motion sought to present a new habeas claim. Slip Opinion at 4.

If the panel opinion meant to suggest that construing Mr. Bernard's motion as a Rule 60(b) motion would unfairly circumvent finality concerns, that suggestion would be unwarranted. Bernard's motion presents an attack not on his death sentence, but on the integrity of the habeas proceedings, which the Government's actions thoroughly corrupted.

If Bernard's Rule 60(b) motion is successful, Bernard would of course be allowed to reopened habeas proceedings and challenge his death sentence due to the Government's *Brady* and *Napue* violations. But this fact does not make his Rule 60(b) motion a second or successive habeas petition: the Supreme Court has explicitly recognized that a Rule 60(b) motion may properly be brought to cure a "defect in the integrity of [previously litigated] federal habeas proceedings," when those defects were produced by actors or factors outside the control of the petitioner

or his counsel. *Gonzalez v. Crosby*, 545 U.S. 524, 532 and n. 5 (2005); *accord In re Pickard*, 681 F.3d 1201, 1206 (10th Cir. 2012); *Gamboa v. Davis*, 782 Fed.Appx. 297, 301-02 (5th Cir. 2019) (Dennis, J, specially concurring).

The panel decision relied on *In re Edwards*, 865 F.3d 197, 204 (5th Cir. 2017) Slip Opinion at 4. But *Edwards*, too, specifically noted that the sort of procedural defects envisioned by Rule 60(b) include "fraud on the habeas court," 865 F.3d at 205, which is exactly the challenge Bernard brings. The panel opinion works an injustice by treating the issue of the Government's violations – which, because of the Government's *continued* violations during the habeas proceeding, Bernard could not have brought earlier – as coming too late. This is exactly the sort of unfairness Rule 60(b) was designed to remedy.

Rule 60(b)(6) is a "grand reservoir of equitable power[.]" *Wooten v. McDonald Transit Assocs., Inc.,* 788 F.3d 490, 501 (5th Cir. 2015). "[I]t provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,'" so long as there are "extraordinary circumstances[.]" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (citation omitted). Certainly, redress is appropriate for the Governmental misconduct that landed Bernard on death row.

**III. Whether this Court can foreclose a capitally sentenced federal prisoner from ever challenging governmental misconduct that led to his death sentence without unconstitutionally suspending the writ is a question of exceptional importance.**

Another question of exceptional importance is whether Bernard's motion must be allowed to proceed because to rule otherwise would result in an unconstitutional suspension of the writ of habeas corpus, contrary to U.S. Const., Art. I, Sec. 9, Cl. 2. Although Bernard fully briefed this issue,[11] the panel opinion did not address it. This fact alone justifies a rehearing, but given the exceptional importance of the issue presented, en banc consideration is warranted.

The *Scott* court supported the view that it would violate the Suspension Clause to interpret § 2255(h) as preventing a prisoner from ever raising a *Brady* claim under circumstances like those presented here. 890 F.3d at 1243. The validity of this view is rendered all the more apparent here, where the petitioner's very life is at stake. At least in a federal capital case, where the Government hides material evidence favorable to the defendant prior to trial and manages to conceal that violation until an initial § 2255 proceeding has concluded, it is necessary either to interpret "successive" consistent with *Scott*'s interpretation, interpret Rule 60(b) to give the

---

[11] Opening Brief at 51-52, *United States v. Bernard*, No. 19-70021, doc. 515247957 (5th Cir., filed December 23, 2019); Reply Brief at 23, *United States v. Bernard*, No. 19-70021, doc. 515341103 (5th Cir., filed March 11, 2020).

district court authority to hear the matter, or hold that § 2255(h) (if interpreted to bar such a motion) violates the Suspension Clause.

## CONCLUSION

The Court should grant en banc review.

DATED this 23rd day of October, 2020.

Respectfully submitted,

*s/ Robert C. Owen*
**ROBERT C. OWEN**
Counsel of Record for Petitioner
Law Office of Robert C. Owen, LLC
53 W. Jackson Blvd., Ste. 1056
Chicago, Illinois 60604
(512) 577-8329 voice
robowenlaw@gmail.com

*s/ John R. Carpenter*
**JOHN R. CARPENTER**
Assistant Federal Public Defender
Federal Public Defender for the
Western District of Washington
1331 Broadway, Suite 400
Tacoma, Washington 98402
253.593.6710 voice
john_carpenter@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk of the Court using the CM/ECF system which will send notification of filing to the parties associated with the case.

*s/ John R. Carpenter*
John R. Carpenter, Washington Bar No.: 23301
Asst. Federal Public Defender
Western District of Washington
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710 / Fax: (253) 593-6714
Email: john_carpenter@fd.org

# CERTIFICATE OF COMPLIANCE

Counsel certifies that:

1. Exclusive of the portions exempted by 5th Cir. R. 32, this Petition for Rehearing En Banc complies with Fed. R. App. P. 35(b)(2) and does not exceed 3,900 words: it contains 3,900 words.

2. This Petition for Rehearing En Banc is printed in a proportionally spaced, Times New Roman typeface using 14-point font in text and 13-point font in footnotes.

3. Upon request, undersigned counsel will provide an electronic version of this Petition and/or copy of the word/page printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits may result in the Court's striking this petition and imposing sanctions against the person who signed it.

*s/ John R. Carpenter*
John R. Carpenter, Washington Bar No.: 23301
Asst. Federal Public Defender
Western District of Washington
1331 Broadway, Suite 400
Tacoma, WA 98402
Phone: (253) 593-6710 / Fax: (253) 593-6714
Email: john_carpenter@fd.org

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 19-70021

———

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

BRANDON BERNARD,

    Defendant - Appellant

———

Appeal from the United States District Court
for the Western District of Texas
USDC Nos. 6:99-CR-70-2; 6:04-CV-164

———

United States Court of Appeals
Fifth Circuit

**FILED**

September 9, 2020

Lyle W. Cayce
Clerk

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

PER CURIAM:*

Federal prisoner Brandon Bernard appeals the district court's order construing his motion for relief from judgment as an unauthorized successive habeas petition and transferring it to this court pursuant to 28 U.S.C. § 1631. We affirm.

The underlying facts have been spelled out in several prior opinions and do not bear repeating in full. Suffice it to say that twenty years ago, Bernard was convicted of capital murder and sentenced to death under federal law after

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-70021

a woman died on Army property when Bernard set fire to a car while she was locked in its trunk. *See United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002). After his conviction and sentence were affirmed on direct appeal, Bernard filed his first 28 U.S.C. § 2255 habeas petition. The district court denied the petition and we denied a certificate of appealability. *See United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014). Bernard then moved for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). The district court construed the motion as an unauthorized successive habeas petition and dismissed it. We again denied a COA. *See United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018).

Bernard has filed another motion for relief from judgment pursuant to Section 2255, and alternatively, Rule 60(b), asserting for the first time claims that the government (1) failed to disclose favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); and (2) presented false testimony at trial in violation of *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173 (1959). The district court again construed the motion as a successive petition but transferred it to this court pursuant to Section 1631.[1] Bernard now appeals the district court's transfer order, arguing his motion is not successive.[2]

We determine *de novo* whether a motion for relief from judgment should be construed as an unauthorized successive habeas petition. *United States v.*

---

[1] The court originally dismissed the motion for lack of jurisdiction but later amended its judgment and transferred the motion to this court. Bernard separately moves for authorization to file a successive habeas petition. We do not address that motion at this time.

[2] Because a Section 1631 transfer order to cure jurisdiction is not a "final order" under 28 U.S.C. § 2253(c)(1)(B), Bernard need not obtain a certificate of appealability. *See United States v. Fulton*, 780 F.3d 683, 688 (5th Cir. 2015).

No. 19-70021

*Orozco-Ramirez*, 211 F.3d 862, 865 (5th Cir. 2000); *In re Coleman*, 768 F.3d 367, 371 (5th Cir. 2014).

Bernard first contends the district court erred in construing his Section 2255 motion as a successive petition because the facts underlying his *Brady* and *Napue* claims could not have been discovered at the time Bernard filed his initial petition. While it is true that a habeas petition is not "successive simply because it follows an earlier federal petition," *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998), we have made clear that "claims based on a *factual* predicate not previously discoverable are successive." *Leal Garcia v. Quarterman*, 573 F.3d 214, 221 (5th Cir. 2009). In other words, if a prisoner's later-in-time petition raises a new claim based on evidence that the prisoner alleges was undiscoverable at the time of his earlier petition, the petition is successive. Bernard's motion does just that and is therefore successive.

Still, Bernard argues *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842 (2007) requires a different result. But *Panetti* only reinforces our holding. There, the Supreme Court held that a capital prisoner's second-in-time habeas petition challenging his competency to be executed was not successive because his claim had not ripened until after the disposition of his first petition. *Id.* at 944–45. The Court emphasized that the second petition was not successive because the factual predicate for the prisoner's claim (his mental state at the time of execution) could not have existed when the prisoner filed his first petition, years before his scheduled execution. *Id.* at 945; *see also Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1260 (11th Cir. 2009) (recognizing that the *Panetti* petition was not successive since no claim of incompetency for execution "is ever ripe at the time of the first petition because the facts to be measured or proven—the mental state of the petitioner at the time of execution—do not and cannot exist when the execution is years away").

3

No. 19-70021

Here, the factual predicate for Bernard's claims (the government's alleged withholding of evidence and false testimony regarding Bernard's role in a gang) existed long before Bernard filed his first habeas petition. Whether or not Bernard could have discovered those facts goes to whether he meets the requirements for filing a successive petition, not whether his motion is successive to begin with. *See Blackman v. Davis*, 909 F.3d 772, 572–73 (5th Cir. 2018) (holding that a second-in-time petition raising *Brady* and *Napue* claims was successive because the claims relied on previously undiscovered facts); *In re Wogenstahl*, 902 F.3d 621, 627–28 (6th Cir. 2018); *United States v. Buenrostro*, 638 F.3d 720, 725–26 (9th Cir. 2011); *Tompkins*, 557 F.3d at 1260. The district court did not therefore err in construing Bernard's Section 2255 motion as an unauthorized successive habeas petition.

Bernard also contends the district court erred in construing his alternative Rule 60(b) motion as a successive petition. If a Rule 60(b) motion seeks merely to present a new habeas claim, "it should be treated as a second-or-successive habeas petition and subjected to AEDPA's limitation on such petitions." *In re Edwards*, 865 F.3d 197, 203–04 (5th Cir. 2018). Bernard's Rule 60(b) motion sought to reopen the proceedings to allow him to litigate his new *Brady* and *Napue* claims. "This is the definition of a successive claim." *Id.* at 204–05; *see also Segundo v. Davis*, 757 F. App'x 333, 336 (5th Cir. 2018) (Rule 60(b) motion was a successive habeas petition where a claim of ineffective assistance of counsel "was the focus of the motion, and reopening the proceedings to relitigate it is the clear objective of the filing"). The district court did not therefore err in construing Bernard's alternative Rule 60(b) motion as an unauthorized successive habeas petition.

For the foregoing reasons, the district court's transfer order is **AFFIRMED**. We **REMAND** to the district court with instructions to dismiss Bernard's Section 2255 petition for want of jurisdiction.

4

# APPENDIX

# APPENDIX INDEX

| Document # | Description | Page # |
|---|---|---|
| ROA.2414 | Sgt. Hunt's Hierarchical Chart [ROA.2414] | 01 |

Case 6:99-cr-00070-ADA Document 566-1-8  Filed 02/05/18  Page 1 of 1

Prince Presley

JAY JAMES Presley | Tweety Bryant Presley

Joseph Presley | ERIC Tinsley

TYC Terrick Lewis | P.T Phillip Thompson | Greg

Clifton Evans | Tony Sparks | Jason LACY | Albert Clifton

Billy Rorie | Maurice Harris | Terry Brown

Ricky Lynch | Chris Vialva | Phillip Lewis | Richard Thomas

PAT PATRICK LAUDERMILK | CAMERON HEAD | Ceddy Mak Cedric Hill | TYC | Ty Tyrone Smith

Jimmy Little | Marcus Schoeffler | DIRTY Billy Stone | Paul Tinsley | REL LAJARVIS NELSON

Shamari | LeVAR Keaney | Juanica Franklin | Renee Barry

JORDAN Melsimeon POLLOCK | MONA RAMONA BERRY | APRIL Lewis | Mike | Tyrone Lewis | HECTOR COLON

Dallas | Sullus | Tim | IRVIN Irving Lewis | Andrea York | James

Connie | DIP BRANDON Bernard | Terry | Ashley | Carl | GOTTI Ghotti Antonio Jackson

212 PIRU BLOODS

5 * Deuce Villain

Government Exhibit
W-99-CR-070 (03)
065

EXHIBIT 8
[App. 01]